Weldon, J.,
delivered the opinion of the court.
In this proceeding the petitioner asks to be discharged from attendance as a witness upon the ground that the court is without authority to issue compulsory process to compel witnesses to attend and testify in support of motions to set aside its judgments.
In order to understand the relevancy and pertinency of the motion it is necessary to state the proceedings upon which this application is predicated.
On the 14th day of May, 1894, the court rendered a judgment in the case of Edward P. Bliss executor of Donald McKay v. The United States for the sum of $123,628.42; and on the 2d day of June the Attorney-General, on behalf of said defendants, filed a motion as follows, to wit:
“Now comes the defendant and moves the court to set aside the judgment entered in the above-entitled action and to grant a new trial thereof for the reason that by said judgment injustice has been done the United States in the premises in that, among other things, the amounts found due are in excess of the amounts warranted by the facts, and in that the evidence •offered in said cause is insufficient to establish either the cost •of extras and changes, over and above payments made, to be the sum of $41,375, or that the enhanced cost of labor or material necessary to perform the original contract, due to delays caused by the United States, amounts to the sum of *3 $64,977.92, or that claimant’s decedent incurred or paid for clerk hire, superintendent, foremen, and watchmen during any period of prolongation of work, due to any acts of the United States, the sum of $17,275.50.
“Which motion is based upon the evidence heretofore taken in said cause and further evidence to be offered in support thereof.”
Again on the 28th of November, 1894, a further motion was filed, asking material changes in the findings and the reduction of the judgment to the sum of $60,000.
On the 5th day of December, 1894, at the instance of the Attorney-General, a subpoena was issued as follows, to wit:
“court of claims.
“To Nathaniel McKay:
“ You are hereby commanded to appear before E. C. Brandenburg, a commissioner, appointed by this court to take depositions, on the 8th day of December, A. D. 1894, at 10.30 o’clock in the forenoon, at his office in the Department of Justice, in the city of Washington, in the District of Columbia, then and there to testily in the case of Edward P. Bliss, executor of Donald McKay, deceased, against the United States, now pending in this court.
“Fail not of appearance at your peril.
“By order of the Court of Claims.
“In testimony whereof I have hereunto set my hand and affixed the seal of said court at Washington, this 5th day of December, A. D. 1894.
“John Randolph,
“ Assistant Cleric of the Court of Claims.”
Upon the service of said subpoena the petitioner made the motion above stated.
It is insisted by the petitioner that there is no suit pending in this court such as is recited in the process, and that therefore he is not bound to respond to any writ based upon the assumption that such a suit is pending.
Ordinarily, suits are commenced in courts either by the filing of a declaration, petition, or bill, or the issuance of a process commanding the appearance of the defendant to answer the demand or complaint of the plaintiff or complainant. In this jurisdiction a suit is commenced “by filing a petition verified in the manner provided by law, and filed in the office of the clerk.” (Rev. Stat., § 1069, Rule 7, June 21,1885.) When that *4 is done, the suit in legal contemplation is pending, and is subject to tbe jurisdiction of the court until it passes beyond the control of the court by being consummated as a judicial determination. The general rule is, that the record of a cause is subject to the control and power of the court in the matter of substance as long as the term continues in which the cause was finally adjudicated; but after the adjournment no order can be made affecting the legal force of the judgment. (McBlair v. United States, 19 C. Cls. R., 539; Wade v. United States, 21 id., 141.)
When a judgment is rendered, either party has a right, before the adjournment of the court at the end of the term, to make a motion for a new trial, and when such motion is made it suspends the legal operation of the judgment, and continues the cause on the docket, subject to the jurisdiction of the court, until it is disposed of by the final action and order of the court. (Murdock v. District of Columbia, 23 C. Cls. R., 43.) If the motion is allowed, it vacates the judgment, and the parties in their legal rights are in the exact condition they were antecedent to the rendition of the judgment; if it is overruled, the legal effect is to restore the judgment as a final order of the court. But a judgment is not a finality until the motion is overruled; and where it continues from one term to another the right of appeal continues with it. (Murdock v. District of Columbia, supra.)
When the Attorney-General filed the motion of the 2d of July, 1894, it had the effect to suspend the judgment of the court in its finality, for further consideration of the court, and the determination of the rights of the parties according to the law applicable to the condition incident to a motion for a new trial. The judgment gave to the claimant certain legal rights; but subject to the rights of the defendants in the law which govern applications for a new trial. In this jurisdiction, the court being the judges of the facts and the law, a more liberal rule of interpretation of the law on the subject of new trials is indulged than in common-law courts, where juries pass upon the facts of a case, and the verdict of a jury is regarded as of great efficacy, in order that the right of trial by jury may not be impaired by an unwarranted interference of the court.
*5 The effect of the motions of the 2d of July was to continue the cause within the jurisdiction of the court; and the case is pending and still undetermined, without a final or a consummate judgment or order of the court. The recital in the subpoena “now pending in this court” is in law a correct statement of the condition of the cause, and the process is not therefore void, as contended by the petitioner.
The law upon the subject of new trials in this court is somewhat peculiar, and differs from the ordinary law upon that subject, because of section 1088, which provides as follows:
“The Court of Claims, at any time while any claim is pending before it, or on appeal from it, or within two years next after the final disposition of such claim, may, on motion on behalf of the United States, grant a new trial and stay the payment of any judgment therein, upon such evidence, cumulative or otherwise, as shall satisfy the court that any fraud, wrong, or injustice in the premises has been done to the United States; but until an order is made staying the payment of a judgment, the same shall be payable and paid as now provided by law.”
The effect of this statute was to enlarge the jurisdiction of the court upon the subject of new trials, by providing a right in the court, even after the adjournment of the court for the term in which the judgment was rendered and while the same might be on appeal to the Supreme Court, to grant a new trial upon any of the grounds specified in the statute. (Henry v. United States, 15 C. Cls. R., 163; Murdock v. District of Columbia, 23 id., 43; Ford v. United States, 18 id., 62; Bellocq Case, 13 id., 195.)
The terms of the notice, while very general in their character bring the motion within section 1088, and by that section, in connection with the general law upon the subject of new trials, we must determine the question as to whether the defendants have the right to take the deposition of the petitioner, to be used on the trial of the issue made by the motion of the United States.
As the petitioner’s application to discharge the writ is based upon the technicality that there is no pending suit, the court must assume that no great inconvenience or hardship will ensue to the petitioner iu complying with the requirement of the writ.
The form of interrogation and answer is much more satisfactory in a judicial inquiry than the less elaborate form of affidavit; and the practice has grown up in this court, upon *6 the ordinary motion for a new trial for newly discovered evidence, to permit evidence in the form of deposition to be taken. By the requirement of the statute, when a motion is made for a new trial embodying the substance presented by the motion in this case, it is the duty of the court to hear and determine such motion “upon such evidence, cumulative or otherwise,” as shall satisfy the court whether u any fraud, wrong, or injustice” has been done the United States.
The term evidence is broad and comprehensive, and while in this connection it may include affidavits in the usual form, it certainly includes testimony taken in the more satisfactory form of question and answer. The fact that the witness petitions the court to be discharged from an obeisance of the writ upon purely technical grounds is an indication to the mind of the court, that he is an unwilling witness; and that the United States are entitled to the most effective form of examination, upon the principle that courts often permit the cross examination of a party’s own witnesses where there is an unwillingness to testify. But aside from this general principle the court holds that under the statute governing new trials in this court, either party has a right to take the testimony of a witness in the manner indicated to be filed as evidence upon a motion for a new trial, especially when the circumstances indicate that such course is in the furtherance of justice.
We have carefully read and considered the briefs filed by both parties, and while the petitioner presents many cases of sound and undoubted law upon the general questions of personal right, and the watchfulness with which the law views every approach of power upon the sacred rights of personal liberty, and its freedom from unnecessary restraint and interference -by judicial process, they do not affect the exact question at issue in this proceeding.
Courts without the force and power of process, commanding and requiring the performance and nonperformance of acts upon the part of the citizen, would be powerless in the accomplishment of the purpose for which they are instituted. The requirement of compelling persons to testify in a matter hav: ing relation to a j udicial proceeding, with all the safeguards which the law throws around them as a witness, can not result in harm to the subject or citizen. Courts of justice must in the adjustment of controversies deal with the testimony of *7 witnesses; and it would be impossible to procure such testimony if they were, for technical and trivial reasons, exempt from the obligation to appear and testify.
The attorney for the claimant in the case in which the process was issued stated in court, while not conceding the power of the court to issue the writ, that there was no objection to the examination of the witness in the form indicated by the writ, so that it becomes an issue between the defendants and petitioner. While the court has no doubt of the duty of the witness to attend as indicated in the summons, and the undoubted power of this court to enforce obedience to its process, still, if the result of an examination may be substantially attained in some more convenient mode, that mode may be adopted, and in that view of the law the following order is made:
It is the order of the court that the witness appear, according to the requirement of the writ, at such time as may be indicated by the Attorney-General, which shall suit the convenience of witness as near as may be.
If the witness shall neglect to do so, the Attorney-General may file a statement, verified by affidavit or certified to by counsel, showing the specific facts which he expects to prove by the witness, and such statement will be considered by the court on a motion for a new trial in lieu of the dej)osition of the witness.